19-1333-cr
*United States v. Robtoy*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of May, two thousand twenty-one.

PRESENT:     JOSÉ A. CABRANES,
             RAYMOND J. LOHIER, JR.,
             STEVEN J. MENASHI,
                       *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                   *Appellee,*                          19-1333-cr

             v.

JEFFRY ROBTOY, AKA Jeff,

                   *Defendant-Appellant,*

ANDRE HUDSON,

                   *Defendant.*

---

**FOR APELLEE:**                     Nicole P. Cate, Gregory L. Waples, Assistant United States Attorneys, *for* Jonathan A. Ophardt, Acting United States Attorney, District of Vermont, Burlington, VT.


**FOR DEFENDANT-APPELLANT:**         Lawrence Gerzog, New York, NY.

1

Appeal from an order of the United States District Court for the District of Vermont (Geoffrey W. Crawford, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED.**

Defendant-Appellant Jeffry Robtoy ("Robtoy") pleaded guilty to the distribution of heroin and cocaine base, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). On May 3, 2019, he was sentenced to 42 months' imprisonment and three years' supervised release. On appeal, Robtoy challenges the application of two sentencing enhancements under the Sentencing Guidelines: a two-level increase for possession of dangerous weapons, and a two-level increase for maintenance of a premises for the purpose of drug distribution. Robtoy further challenges the imposition of three standard conditions of supervised release: a condition prohibiting communication with known convicted felons, a condition requiring that Robtoy maintain full-time employment, and a condition requiring notice to third parties if Robtoy's probation officer determines that he poses a risk to them and obtains the prior approval of the District Court. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

A.

Robtoy argues that the District Court procedurally erred in imposing the two-level sentencing enhancement for possession of dangerous weapons and the two-level sentencing enhancement for maintaining a premise for the purposes of drug distribution. We disagree.

We review claims of substantive and procedural error in sentencing "under a deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). "Procedural error occurs when the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). Further, we "review a district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Pristell*, 941 F.3d 44, 49 (2d Cir. 2019) (citations omitted).

U.S.S.G. § 2D1.1(b)(1) permits the District Court to impose a two-level increase if a "dangerous weapon (including a firearm) was possessed." The Commentary stipulates that "the [sentencing] enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.,* cmt. 11. Robtoy argues that there was "no evidence" connecting the weapons found in his apartment with the sale of drugs. But the

District Court expressly considered the nature and location of the weapons as evidence of the weapons' likely connection to the offense. Specifically, the District Court noted the presence of a knife resembling "a dagger," a knife "associated with military or defense use," and a flashlight that looked to have been modified "to hit somebody as opposed to find your way to the bathroom in the middle of the night" in close proximity to drugs and drug-related materials in Robtoy's apartment. App'x 54. On the basis of this evidence, the District Court concluded that it was not improbable that the weapons were located on the premises to protect Robtoy from interference with his illegal distribution of narcotics. We can find no clear error here.

U.S.S.G. § 2D1.1(b)(12) provides for a two-level sentencing enhancement "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Distribution of a controlled substance "need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.,* cmt. 17. While the parties agree that the premises in question served doubly as Robtoy's residence and as a base for drug distribution, Robtoy argues that the evidence adduced was insufficient to support the District Court's finding that the apartment was "used principally for drug distribution." But the District Court considered "the presence of Mr. Hudson, quite a large quantity of drugs, the history of prior purchases from that location" as evidence that "the primary uses of Mr. Robtoy's apartment . . . included storing and distributing drugs." App'x 56-57. Again, we can find no clear error here.

B.

We next address Robtoy's argument that three "standard" conditions of supervised release should not have been imposed. We review the imposition of conditions of supervised release for abuse of discretion. *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019).

First, Robtoy argues that the employment condition was unreasonable under the factors set forth in 18 U.S.C. § 3553(a). We disagree. The District Court considered Robtoy's offense as well as his criminal and medical history and concluded that Robtoy should be encouraged to find and maintain employment in furtherance of the statutory sentencing goals of rehabilitation and protecting the public. In imposing the condition, moreover, the District Court observed that Robtoy's history of mental health conditions and disabilities associated with traumatic brain injury may, if substantiated, suffice to excuse him from the condition. Thus, if Robtoy is unable to fulfill this condition, he can request an exemption from his probation officer or, if necessary, refer the matter back to the District Court. As such, the District Court's imposition of this condition does not constitute an abuse of discretion.

Next, Robtoy argues that the condition prohibiting communication with known convicted felons subject to permission from his probation officer is, *inter alia,* unconstitutionally vague and an undue infringement on his associational rights. He also argues that it is overbroad and not

3

reasonably related to the § 3553(a) factors. We disagree. This is a standard condition of supervised release, which the District Court believed would assist Robtoy in disengaging from the criminal community. The language of the condition is not impermissibly vague; nor does it implicate a fundamental liberty interest. In *United States v. Bryant*, 976 F.3d 165, 182-84 (2d Cir. 2020), we held that any prohibition on communications with immediate family members requires heightened, on-the-record justification. But in this case the District Court explicitly *excluded* members of Robtoy's immediate family and even expressed a willingness to exclude a first cousin with whom Robtoy claimed to have close personal ties. App'x 62-66. As such, the District Court did not abuse its discretion in imposing this condition.

Finally, Robtoy argues that the risk-notification condition is impermissibly vague. At this stage, Robtoy's challenge is merely an "abstraction" as neither his probation officer nor the District Court have found that the defendant poses a risk of committing further crimes against another person, such that Robtoy would be required to notify any potential victim. Applying the same reasoning we applied in *United States v. Traficante*, 966 F.3d 99, 105-07 (2d. Cir. 2020), Robtoy's claim is unripe for decision. If such notice is ever required (or if there is a "substantial likelihood" of it ever happening), Robtoy may raise his constitutional challenge to the risk-notification condition at that time.

**CONCLUSION**

We have reviewed all of the arguments raised by Robtoy on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the May 2, 2019 sentence of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4